862 F.2d 871
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Roberto Charles TAYLOR, Defendant-Appellant.
 No. 88-5025.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Sept. 27, 1988.
Decided: Nov. 10, 1988.
 
 James O. Broccoletti (Zoby & Broccoletti), for appellant.
 Henry E. Hudson, David S. Cayer (Office of the United States Attorney), for appellee.
 Before SPROUSE, CHAPMAN and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Roberto Charles Taylor appeals an order of the district court which denied his motion to suppress cocaine base ("crack") found on his person. Under a conditional plea agreement, Taylor pled guilty to possession of cocaine base with intent to distribute, but reserved the right to appeal the denial of his suppression motion. We affirm.
 
 
 2
 Taylor was observed by three agents of the Drug Enforcement Administration (DEA) as he arrived at Washington National Airport from New York on October 5, 1987. Agent John Robinson noticed Taylor because he was walking very quickly and appeared to be looking nervously about him as he came off the plane and went down the concourse. Robinson followed and saw Taylor make a call from a pay phone across from the airport sundry shop. Taylor was still looking around in a very nervous manner. When Taylor hung up, Agent Robinson approached, identified himself as a DEA agent and asked if he could speak with Taylor. Taylor agreed and, in response to Robinson's request to see his ticket and identification, Taylor showed him a one-way ticket for R. Taylor and a New York driver's license in the name of Roberto Taylor. Robinson examined both and returned them to Taylor.
 
 
 3
 Agent Robinson then explained that he was part of a DEA interdiction team and that there was a problem with drugs coming into Washington from other cities such as New York. He asked Taylor whether he was carrying any narcotics and Taylor said he was not.
 
 
 4
 In their testimony at the suppression hearing, Robinson and Taylor differed about what happened next. Robinson testified that he asked Taylor if he would consent to a search of his person and whatever articles he had, and that Taylor answered, yes, go ahead. He also stated that the other two agents working with him remained a good distance away and came no closer than about ten feet while he was speaking with Taylor in the public hallway.
 
 
 5
 Taylor testified that while he talked with Robinson the other two officers were "closing in" on him and ended up right behind him. He testified that he did not think he was free to leave, that when Robinson asked for permission to search he refused, and that Robinson patted him down anyway.
 
 
 6
 Both Robinson and Taylor agreed that Robinson conducted a pat-down search and felt a hard circular disk under Taylor's pants, extending from the waistband into the groin area. They agreed that Robinson asked him if it was contraband and that Taylor answered that it was.
 
 
 7
 Robinson further testified that he suggested they move into the airport police station, which was next to the sundry shop, in order to complete the search in a more private place. He said that Taylor agreed and that they went into a hallway next to the police station where Robinson reached into Taylor's pants and took out two plastic bags each containing a tannish disk about four inches in diameter and one-half inch thick. Robinson recognized it as crack; he asked Taylor what it was and Taylor answered that it was cocaine base. Robinson then arrested Taylor and advised him of his Miranda rights.
 
 
 8
 The district court found that no seizure had occurred until Taylor and the agents moved into the hallway off the police station after Robinson's discovery of the disk under Taylor's pants and that the crack was admissible because Taylor had freely consented to the pat-down search.*
 
 
 9
 In this appeal, Taylor contends first that the district court erred in finding that he had not already been seized within the meaning of the Fourth Amendment without probable cause or reasonable and articulable suspicion at the time Agent Robinson asked permission to do the pat-down search. He bases this contention on (1) his testimony that the other two officers closed in on him while he was talking to Agent Robinson, (2) the undisputed fact that Robinson showed his DEA identification and told him that his job was to stop drugs coming into Washington and (3) his assertion that he did not feel free to leave at the time Robinson asked permission to search.
 
 
 10
 A district court's finding that a seizure has or has not occurred is essentially factual and will be upheld unless it is clearly erroneous. United States v. Gooding, 695 F.2d 78, 82 (4th Cir.1982). In United States v. Mendenhall, 446 U.S. 544, 553-54 (1980), the Supreme Court held that a person is seized within the Fourth Amendment only when his freedom of movement is restrained by means of physical force or a show of authority. In the absence of these, no seizure occurs. Therefore, law enforcement officers do not violate the Fourth Amendment by approaching someone in a public place and asking him if he is willing to answer some questions. Florida v. Royer, 460 U.S. 491, 497 (1983). Nor does the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. Id.
 
 
 11
 After hearing the testimony of Taylor and Agent Robinson, the district court determined that the two agents working with Robinson did not approach nearer than ten feet before Robinson felt the disk under Taylor's pants. This credibility determination is within the sole province of the fact-finder and is not subject to review. Pigford v. United States, 518 F.2d 831 (4th Cir.1975). The district court further found, and we agree, that the agents did nothing, prior to the discovery of the concealed disk, which would, objectively viewed, have caused Taylor to believe he was not free to leave if he chose.
 
 
 12
 Taylor next argues that the district court erred in finding that he consented to the pat-down search and he further contends that, even if he did consent, his consent was not voluntary.
 
 
 13
 The district court concluded that Taylor consented to the search by crediting Robinson's testimony over Taylor's on this point, in spite of the fact that Robinson's affidavit in support of the arrest warrant did not mention a consent by Taylor. Again, we do not second-guess the district court's determination of credibility, and we find no error in its factual determination that consent was given.
 
 
 14
 Taylor also maintains that his consent was not voluntary because he was not advised that he had the right to refuse, because he was particularly vulnerable to implied coercion due to his youth (he was twenty) and inexperience, and because the officers kept closing in on him. He correctly states that the district court made no finding as to the voluntariness of the consent. This is because at the suppression hearing Taylor did not argue that the consent was involuntary. The rule is well established that claims first advanced at the appellate level and not presented to and heard by the district court will not ordinarily be considered on appeal. Wilkins v. Whitaker, 714 F.2d 4, 7 n. 1 (4th Cir.1983), cert. denied, 468 U.S. 1217 (1984); United States v. One 1971 Mercedes Benz, etc., 542 F.2d 912, 914-15 (4th Cir.1976). We note, however, that the factors Taylor points to as support for his contention would be unlikely to lead to a finding of involuntariness. Whether a consent is voluntary is determined by the totality of the circumstances which were in this case non-coercive, and knowledge of the right to refuse consent is not a prerequisite to a valid consent. Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973).
 
 
 15
 We dispense with oral argument because the facts and legal arguments are adequately presented in the briefs and record and it would not significantly aid the decisional process. We affirm the district court's order denying Taylor's motion to suppress the evidence seized and we affirm his conviction.
 
 
 16
 AFFIRMED.
 
 
 
 *
 The district court suppressed Taylor's statement identifying the disks as cocaine base after Robinson took them from his pants because Taylor was at that point in custody and had not received a Miranda warning